IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JULIAN BROWN, a certified Homecare,
worker of Oregon,

       Plaintiff,

    v.

KATE BROWN, in Her Official Capacity as
Governor of the State of Oregon, *et al.*,

       Defendants.
_____

Case No. 6:15-cv-01523-MC

OPINION & ORDER

MCSHANE, Judge:

      Since 2011, plaintiff Julian Brown has worked as a certified home healthcare worker
("HHW") for his father. Brown seeks to certify a class of HHWs who had "fair share" fees
deducted without consenting in writing to union membership and/or after resigning their union
membership. Like every other post-*Harris* court considering similar motions to certify classes of
HHWs, I conclude Brown's motion for class certification, ECF No. 4, fails to satisfy the
requirements of rule 24(b)(3).

## BACKGROUND

      Since 2001, pursuant to the Oregon Constitution, all HHWs are represented by a single
representative. That year, the HHWs voted to have defendant Service Employees International

1 –ORDER

Union Local 503 (the "Union") represent them in negotiations with the state. The state pays HHWs, in part to avoid higher costs if the disabled or elderly had to go instead to nursing homes.

Although the Union negotiates collective bargaining agreements for all HHWs with the state, not all HHWs are members of the Union. Union members pay union dues. Under the Supreme Court's decision in *Abood v. Detroit Bd. of Ed.*, 431 U.S. 209 (1977), Oregon, along with many other states, withheld "fair share" fees from non-union members and sent those fees to the union. The fair share fees were equal to the dues paid by union members. In 2014, the Supreme Court distinguished *Abood* and held the First Amendment prohibits withholding fair share amounts from those "who do not want to join or support the union." *Harris v. Quinn*, 134 S. Ct. 2618, 2644 (2014). After *Harris*, Oregon stopped automatically deducting fair-share fees.

In the wake of *Harris*, the National Right to Work Legal Defense Foundation and the Freedom Foundation brought several First Amendment cases around the country that are similar to the action here. Although those plaintiffs sought to certify classes similar to the proposed class here, to date all have failed. Those cases, while not binding, are indeed persuasive.

## STANDARDS

A plaintiff seeking to certify a class must establish each prerequisite of rule 23(a): 1) numerosity; 2) commonality; 3) typicality; and 4) adequacy. Plaintiff's burden of proof for these elements is a preponderance of the evidence. *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). The predominance requirement of Rule 23(b)(3) mandates that "questions of law or fact common to the class predominate over any questions affecting only individual members."

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other

2 –ORDER

class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N. Am. LLC.*, 617 F.3d 1168, 1175 (9th Cir. 2010). To satisfy this element, Brown must prove that he possesses the same interest and suffers the same injury as the putative class members, meaning his claims must rest on a common contention. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551–52 (2011); *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147 (1982).

## DISCUSSION

As noted, in *Abood*, the Supreme Court upheld fair share provisions for non-union state employees to pay for union work related to CBA negotiations. 431 U.S. at 235-36. The purpose of fair share provisions is to prevent non-union members from obtaining a "free ride" by receiving benefits bargained for in the CBA without paying union dues. The *Harris* majority concluded *Abood* applied solely to state employees and not HHWs who, although paid by the state, were only *quasi* employees of the state, i.e., state employees for CBA purposes but employees of the patient for most other purposes. *Harris* held that the First Amendment prohibits the collection of union fees from the checks of non-public employees "who do not want to join or support the union." 134 S. Ct. at 2644.

Brown seeks to certify the following class:

> all homecare workers who have not consented in writing to membership in SEIU 503 and/or who have resigned prior membership AND from whom DHS deducted monies from their voucher/service payments or "salaries" and remitted the deducted monies to SEIU Local 503 and its affiliates. The class includes everyone who comes within the class definition at any time from August 12, 2013, until the conclusion of this action.

The proposed class here is similar to proposed classes of HHWs other courts have declined to certify. *See Riffey v. Rauner*, 2016 WL 3165725 (N.D. Ill June 7, 2016); *Centeno v. Inslee*, C14-200 (W.D. Wa. Sept. 17, 2015); *Schlaud v. Snyder*, 785 F.3d 1119 (7th Cir. 2015).

3 –ORDER

Those courts each rejected the plaintiffs' attempt to broaden *Harris* by compelling a First Amendment violation absent prior express and/or written authorization by the HHW for fair share deductions. Brown argues those courts simply got it wrong. I disagree.

In seeking to certify the proposed class, Brown seeks to extend *Harris's* holding to the conclusion that any fair share deductions without prior written consent equal *de facto* constitutional violations. I agree with the three courts listed above and conclude nothing in *Harris* (or constitutional law generally) compels such a result. The holding of *Harris* could hardly be clearer: "The First Amendment prohibits the collection of an agency fee from [HHWs] who do not want to join or support the union." 134 S. Ct. at 2644. The constitutional violation discussed in *Harris* depended not on prior written consent, but on the HHW's subjective desire to join or support the union. *Riffey*, *Centeno*, and *Schlaud* all agree with that conclusion. No case supports Brown's argument for a *per se* First Amendment violation. At oral argument, I likened this situation to one involving mandatory school prayer. While a student not wishing to pray would suffer a constitutional violation, a student voluntarily choosing to join the prayer would suffer not only no injury, but no constitutional violation in the first place. Likewise, an individual with no desire to purchase a firearm does not suffer an injury under the Second Amendment simply by living in a city with unconstitutional restrictions on handguns. These cases, like the case here, necessarily involve questions into the subjective intent or desires of the plaintiffs.

As discussed in the three post-*Harris* cases deciding this issue, the fact-sensitive inquiry involved in determining each proposed class members' subjective intent has fatal consequences to any motion to certify a class like the proposed class here. In *Centeno*, the district court denied a motion to certify the class and then a renewed motion to certify the class. *See* ECF No. 36-1, 36-2. Washington had a similar fair share program and, like Oregon, stopped automatic

4 –ORDER

deductions immediately after *Harris*. Plaintiffs sought to certify a class of "all Individual

Providers who, at any point from February 2011 to the present, were subjected to the compulsory

deductions without their explicit consent." ECF No. 36-1, 3. Judge Pechman concluded plaintiffs

failed to demonstrate common questions as to class members predominated over questions as to

individual members.[1] While plaintiffs sought to define the class to include HHWs who failed to

give "explicit consent" to dues deductions, Judge Pechman noted there were other ways than,

say, signing a union card, to express consent or support for the deductions. The court noted some

members may have voted in favor of a CBA without joining the union and thus the deductions

would have been constitutional even though those members may not have provided "explicit

consent" to the deductions.

> Because consent was not understood to be necessary by the Defendants prior to
> *Harris*, the Court can anticipate pervasive factual disputes about whether
> particular instances of alleged explicit consent (potentially including oral
> representations to a union member) were effective. Plaintiffs themselves dispute
> that consent that postdates deductions is necessarily effective retroactively, thus
> introducing the possibility of factual disputes about whether individual union
> members suffered any injury prior to signing a membership card. Consent is a
> fact-intensive issue even in non-constitutional areas, as courts have seen in
> consumer protection cases involving the Telephone Consumer Protection Act.
> There is no reason to think it would be more easily resolved on a class-wide basis
> here.
>
> Factual questions concerning evidence of consent are likely to dominate the
> inquiry into Defendants' liability for individual providers' deductions, so class
> certification is inappropriate on the basis of predominance as well.

ECF No. 36-1, 12-12 (internal citations omitted).  Similar hurdles are present here.

*Schlaud*, concerning Michigan's fair share program, is also instructive. Plaintiffs sought

to certify a class of HHWs who "did not sign authorization cards for the Union or vote in

---

[1] Judge Pechman—and the *Schlaud* and *Riffey* courts—also concluded plaintiffs failed to demonstrate the
"adequacy" prong of rule 23(a)(4). ECF No. 36-1, 10. Although the reasoning of those courts is persuasive, I need
not decide the issue here as Brown's motion fails under rule 23(b)(3).

elections that regarded Union representation or ratification of the Union's collective bargaining agreement." *Schlaud II*, 785 F.3d 1119, 1123 (6th Cir. 2015). The Sixth Circuit analyzed *Harris* and agreed with the district court that "short of requiring depositions of each provider in the proposed subclass, it is impossible to determine the motivations behind each provider's action (or inaction) regarding the Union." *Id.* at 1123.[2]

On remand from the Supreme Court, *Riffney*, decided less-than one month ago, also points out fatal flaws similar to Brown's motion to certify. *Riffney* also concerned arguments regarding *per se* constitutional violations. Judge Manish S. Shaw described plaintiffs' argument:

> Plaintiffs believe that a First Amendment injury occurs whenever an individual is compelled to subsidize the speech of another without prior authorization. And because the union received fair-share fees from the nonmember personal assistants without their affirmative consent, plaintiffs conclude that all nonmember personal assistants who paid fair-share fees suffered First Amendment injuries—their money was wrongfully seized whether they agreed with the union or not.

2016 WL 3165725 at *3. Judge Shaw discussed *Knox v. Serv. Emp. Int'l Union, Local 1000*, 132 S. Ct. 2277 (2012) and *Harris* and concluded that if a HHW wished to support the union, the HHW would suffer no First Amendment injury from a fair-share deduction. *Id.* "Thus, to prove injury, and the complete constitutional tort, plaintiffs must prove contemporaneous subjective opposition to the compelled payments." *Id.* As discussed above, I agree. Judge Shaw concluded the factual questions involved in determining individual damages to potential class members would predominate over other issues, making certification unavailable under rule 23(b)(3). *Id.* at *8.

Likewise, factual issues present here prevent Brown from demonstrating the predominance of questions common to the class required under rule 23(b)(3). Under these facts,

---

[2] As in *Centano*, the *Schlaud* court pointed to problems under rule 23(a)(4) concerning plaintiffs' representation of the class. *Id.* at 1127, 1128 n.2. Once again, while this is a persuasive argument, I need not decide it here.

especially considering the apparent post-*Abood* and pre-*Harris* constitutionality of automatic

fair-share deductions, the particular inquiries regarding subjective intent make class certification

inappropriate. Brown argues:

> The factual issue is not whether these HCWs subjectively may have or do support
> SEIU, financially or otherwise, but whether they had given written authorization
> or permission for the State to make the union deductions. The legal issue
> presented is the legality of those automatic and unauthorized deductions, not the
> motives of Plaintiff or class members' subjective views about SEIU or each other.

Reply, 2.

But this case, like the three cases discussed above, is entirely about the motives of the

class members. *Harris* did not hold automatic deductions absent prior written authorization

violated the First Amendment. As noted, the holding of *Harris* was much narrower. Determining

whether individual class members "want[ed] to join or support the union" are critical factual

questions that will vary as to each individual class member. *See Harris*, 134 S. Ct. at 2644.

While plaintiff is correct that under *Harris*, the mere fact a non-member benefits from the

union's negotiations does not alone justify the automatic deduction, that issue is irrelevant to this

action. No one argues that the deductions here were constitutional because the non-members

benefitted (via higher wages, insurance, etc). Rather, the individual constitutional claims of each

proposed class member depend on whether, at the time of the deduction, the member wished to

join or support the union.

Brown's proposed class includes HHWs who had fair share deductions from August 12,

2013 until today without consenting in writing to union membership. That class undoubtedly

includes hundreds, if not thousands, of HHWs who support the union or wish to join the union

but for whatever reason have not consented in writing to joining the union. The Union submitted

evidence that the proposed class would include more than 9,400 HHWs who had fair share

deductions withheld and then subsequently joined the union. Conroy Decl. ¶ 40. Additionally, the proposed class does not appear to take into account the few months of lag time between when a new HHW starts working and when the union learns of this and gets the paperwork to the worker (often returned signed later). During that interim period, DHS automatically withheld fair share fees. Conroy Decl. ¶ 42.

The union also submitted declarations regarding the odd form of accounting for the fair share provisions. Because the fair share deductions equaled the union dues, some of the "financial intermediaries" charged with processing" HHW paychecks "consistently classified their withholdings as fair share payments instead of union dues, even though the homecare workers had signed membership authorizations." Conroy Decl. ¶45. As the compelled deductions were lawful before *Harris*, and as the amounts were identical, apparently no one was overly concerned with how the deductions were classified. In short, many HHWs thought they were in the union (and were happy to be so) when in fact they were non-members.

I agree with the Union that the only way for it to defend itself in this action would be to conduct depositions of each and every proposed class member to determine that individual's pre-*Harris* subjective intent or desire concerning union membership. Apart from any potential conflicts with the class resprentative(s), the factual inquiries specific to individual class members predominate over questions of law or fact common to the class. Brown's proposed class fails to meet the requirements of rule 23(b)(3).

/ / / /

/ / / /

/ / / /

/ / / /

8 –ORDER

## CONCLUSION

Because Brown's proposed class fails to meet the predominance requirement of rule

23(b)(3), the motion for class certification, ECF No. 4, is DENIED.


IT IS SO ORDERED.

DATED this 29th day of June, 2016.


_____/s/ Michael J. McShane___
Michael McShane
United States District Judge

9 –ORDER